**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  November 23 2015**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 12-33850 |
| | ) | |
| Robert F. Hadley, Jr., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 14-3089 |
| | ) | |
| Douglas A. Dymarkowski, Trustee, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Barry E. Savage, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING CROSS-MOTIONS  FOR SUMMARY JUDGMENT

Plaintiff Douglas A. Dymarkowski ("Plaintiff" or "Trustee") is the Chapter 7 Trustee in the underlying Chapter 7 case filed by Robert F. Hadley, Jr. ("Debtor").  On August 1, 2014, Plaintiff commenced this adversary proceeding, seeking to avoid and recover alleged avoidable transfers "[p]ursuant to 11 U.S.C. Sections 105, 547, 548 and/or 549 and 550; and Pendent or Incorporated by 11 U.S.C. Section 544, [t]he Ohio Uniform Fraudulent Transfer Act, O.R.C. Chapter 1336; and to [d]isallow [c]laim(s) pursuant to 11 U.S.C. Section 502(d) made to or for the benefit of Barry E.

Savage (the 'Defendant')." [Doc. #1, p. 2].

Barry E. Savage ("Defendant") is Debtor's "long time attorney for personal and business matters". [Doc. # 31, p. 2].

Plaintiff asserts that Debtor, directly or indirectly, made transfers to or for the benefit of Defendant on or about August 18, 2012, three days before Debtor filed his Chapter 7 bankruptcy petition. [Doc. # 1, ¶ 9]. The transfers Plaintiff seeks to avoid were of two vehicles, a 1954 MG and a 1977 Ferrari, originally alleged by the Trustee to be valued at $20,000.00 and $30,000.00 respectively. [*Id.*]. Plaintiff seeks to avoid the alleged preferential or fraudulent transfers and recover either the vehicles or the full amount of the transfers as property of the Chapter 7 bankruptcy estate. Additionally, Plaintiff requests that the court award judgment against Defendant together with pre-judgment and post-judgment interest, along with fees and costs incurred. [Doc. # 1, p. 13].

This proceeding is now before the court on Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") [Doc. # 30], Defendant's Motion for Summary Judgment ("Defendant's Motion") [Doc. # 31], Plaintiff's Response to Defendant's Motion ("Plaintiff's Response") [Doc. # 32], Defendant's Response to Plaintiff's Motion ("Defendant's Response") [Doc. # 33], and Defendant's Reply to Plaintiff's Response ("Defendant's Reply") [Doc. # 40].

Having considered the parties' respective arguments, for the reasons that follow, Plaintiff's Motion will be granted, and Defendant's Motion will be denied.

## **FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are not in dispute. Defendant has been Debtor's long time attorney for both business and personal matters, from approximately 2002 until the filing of Debtor's Chapter 7 petition on August 21, 2012. [Doc. # 30, Pl. Ex. C, p. 43]. The court notes that Defendant is not Debtor's bankruptcy attorney.

Debtor's business provided packaging services for automotive businesses, including General Motors and Chrysler. He was also engaged in real estate investment which relied upon rental income to pay substantial mortgage debt. Debtor's automotive industry-based business experienced "difficulties" in 2007, which resulted in the loss of Debtor's two main customers, Chrysler and General Motors. [Doc. # 31, p. 2]. Also in 2007, Debtor liquidated "a majority of his assets and invested it in his business enterprises to keep them afloat. The real estate investments suffered a similar fate." [*Id.*]

2

At his deposition, Defendant testified that his law practice timesheets indicated that he was providing legal services to Debtor in 2008. At that time, Defendant was "doing both [Debtor's] personal work . . . and [Debtor] had a couple of other [business] entities that I was doing work for...." [Doc. # 30, Pl. Ex. C, p. 44]. All of Debtor's legal bills were sent to him by Defendant on a monthly basis. [*Id.*]

Because of Debtor's aforementioned business difficulties, he was unable to pay Defendant for his legal services. As a result of his working relationship with Debtor, Defendant understood that Debtor would be unable to pay his ongoing legal fees. On May 19, 2008, Debtor gave Defendant possession of the titles[1] for two of Debtor's vehicles, a 1954 MG and a 1977 Ferrari. The vehicles were held in Mr. Hadley's self-settled revocable trust [*Id.*, Pl. Ex. A, p. 15] which Defendant had prepared for Debtor the year before. [*Id.* at p. 46]. Defendant alleges that he accepted the titles to "secure an attorney lien for unpaid services then and those to accrue." [Doc. # 31, p. 3].

Defendant stated at his deposition that he remembered the exact date he received the titles, because it was both his birthday and the day that National City Bank "called the [$3.5 million] line of credit on [one of Debtor's businesses]" on which Debtor was a personal guarantor. Defendant took possession of the vehicle titles, because he "wanted to be protected on attorney fees. [Debtor] had liquidated some personal assets to put into the company, and I kn[ew] from prior experience that ... you need to protect yourself with attorney fees." [Doc. # 30, p. 46]. At this time, Defendant had no written security agreement with Debtor, but he believed himself secure with his alleged "attorney's lien linked to possession of the free and clear titles." [Doc. # 31, p. 3].

From January 1, 2008 to December 31, 2008, Defendant provided $41,580.60 worth of legal services to Debtor. From January 1, 2009 to August 21, 2012, Defendant provided an additional $28,744.10 worth of legal fees to Debtor, totaling $70,324.70 in unpaid legal fees over the course of that time period.

In the spring of 2012 ("either the last week of April in 2012 or the first week of May"), Debtor

was "getting pressure" from an attorney from Huntington Bank. [Doc. # 30, p. 48]. Due to

_____

[1]/ The titles to the two motor vehicles were not signed over to Defendant at that time. They were signed over to Defendant on or about August 17, 2012. [Doc. 30, pp. 50-55; *Id.*, Pl. Exs. A & B, pp. 15-35].

3

a conflict of interest, Defendant was unable to represent Debtor in this issue, but he became aware of the bank's pressure during a conversation with Debtor. At that time, Defendant informed Debtor that he wanted to take possession of the vehicles, as a way of "protect[ing] myself further." [*Id.*, p. 49]. Prior to Defendant obtaining possession of the vehicles, Debtor had kept them stored "outside of Ypsilanti, Michigan. They hadn't been licensed and they were uninsured." [Doc # 30, p. 47]. Upon gaining possession, Defendant initially stored both cars in a Waterville, Ohio barn. [*Id.*]

On August 15, 2012 Debtor assigned ownership of the vehicles to Defendant, as noted on the vehicle titles and assignment of ownership forms [*Id.,* Pl. Ex. B, pp. 30-35]. The price for the vehicles was indicated as zero, and as Defendant said in his deposition, "the attorney fees were in excess of what the value of the cars were [at that time]." So, Debtor and Defendant agreed that the transactions "basically washed out all attorney fees." [*Id.,* Pl. Ex. C, p. 52].

At the time that Debtor signed off the record titles to Defendant, they "generally agreed" that the Ferrari was worth $25,000 [*Id.* at p. 53] and the MG was worth "about" $15,000. [*Id.* at pp. 54-55]. The vehicle titles were notarized on August 17, 2012, in the presence of a Waterford Bank attorney, Debtor, and Defendant. Debtor filed his Chapter 7 petition in this court on August 21, 2012. [Case No. 12-33850, Doc. # 1].

After Debtor signed over the titles to Barry E. Savage, Defendant kept the vehicles in Waterville. Despite Debtor's Chapter 7 bankruptcy, Defendant was able to take out loans on the vehicles with Directions Credit Union for $15,000 and with Farmer's Merchant State Bank for $22,500 on July 22, 2013. [Doc. # 30, Pl. Ex. L, p. 59]. In November 2013, Defendant sold the vehicles to a third party for $40,000.

The record reflects that at the time the titles were signed over to Defendant, the two vehicles were not running. [*Id.*, p. 25-26]. Work was done on both vehicles to get them running, with substantial work being required on the Farrari. [*Id.*, p. 55-58]. There is no evidence before the court regarding what monies, goods or services were exchanged for the work on the two motor vehicles to put them in operating condition.

Plaintiff filed his Complaint in this court on August 1, 2014. In his Complaint, Plaintiff seeks to avoid the alleged preferential or fraudulent transfers and recover either the vehicles or the full amount of the their values as property of the Chapter 7 bankruptcy estate [Doc. # 1]. In opposing the Complaint, Defendant contends that he had a possessory attorney lien on the motor vehicles, because

4

he had possession of the vehicle titles in 2007, and took physical possession of the two vehicles "on or about May 1, 2012, more than 90 days prior" to Debtor's filing. [Doc. # 31, p. 4].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999).

The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate. "When parties

5

file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003)(*quoting, B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* §2720 (1998).

## II. Cross-Motions For Summary Judgment On Preferential Transfer Issues Under Section 547(b).

Plaintiff's Motion seeks summary judgment on Count I of the claims listed in the Complaint, pursuant to 11 U.S.C. §547(b). Plaintiff is seeking to recover a transfer made by Debtor to Defendant as a preference under 11 U.S.C. § 547(b). Section 547(b) provides as follows:

> Except as provided in subsection (c) and (I) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made–
>>> (A) on or within 90 days before the filing of the petition; or
>>> (B) between ninety days and one year before the date of the filing of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if–
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

6

"[A]ll five enumerated criteria must be satisfied before a trustee may avoid any transfer of property as a preference." *In re Fulghum Const. Corp.*, 706 F2d 171, 172 (6th Cir. 1983), *cert. den.*, 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310. "The trustee bears the burden of proving each of the five elements." *In re Southern Air Transport, Inc.*, 511 F.3d 526, 534 (6th Cir. 2007).

While §547(b) authorizes the avoidance of certain prepetition transfers, the Bankruptcy Code excepts from avoidance the types of transfers described in §547(c). Plaintiff has the burden of proving all five of the elements making a transfer avoidable under §547(b); however, the party against whom recovery or avoidance is sought has the burden of proving that a transfer is not avoidable under one of the affirmative defenses of §547(c). 11 U.S.C. §547(g).

The evidence in this case shows that Defendant was, at the time of the vehicle transfers, a creditor of Debtor. On the date that Debtor signed off titles of the vehicles to Defendant, he owed Defendant $70,324.70 in unpaid legal fees. [Doc. # 29, p. 3]. Defendant stated on the record at his deposition that he and Debtor agreed that although Debtor owed more than the $40,000 value of the two vehicles, transferring ownership of the vehicles would "basically wash[...] out all attorney fees." [Doc. # 30, p. 52].

The vehicle transfers were made to Defendant from Debtor's self-settled revocable trust, of which the beneficiary is the trustee-Debtor. The court notes that property in a self-settled revocable trust is property of the estate. *See, In re Starr*, 485 B.R. 835, 837 (N.D. Ohio 2012); *In re Hansen*, 111 B.R. 647, 651 ("A self-settled trust is, generally, not a valid spendthrift trust."); *In re Leimbach*, 99 B.R. 796, 800 (Bankr. S.D. Ohio 1989)("If the settlor and the beneficiary are viewed as substantively the same entity, the trust is self-settled and will not be a valid spendthrift trust under the law of most jurisdictions, including Ohio."); *In re Hotchkiss*, 75 B.R. 115, 117 (Bankr. N.D. Ohio 1987)("A self-settled spendthrift trust may be reached by creditors."). Thus, ownership of the vehicles was transferred from Debtor (despite the self-settled trust) to Defendant on account of the antecedent debt (the attorney fees) owed by Debtor to Defendant before the transfer was made. As Defendant testified, the attorney fees were "washed out" by the transfer. [Doc. # 30, p. 52]. Therefore, Plaintiff has met his burden under elements (1) and (2) of Section 547(b).

Although Plaintiff must also prove that Debtor made the transfers while he was insolvent, there is a statutory presumption of insolvency during the ninety days immediately preceding the filing of bankruptcy. 11 U.S.C. §547(f). Defendant offers no evidence to rebut that statutory presumption.

7

*See In re Oakes*, 7 F.3d 234 (Table), 1993 WL 339725, *2 (6th Cir. Sept. 3, 1993)(*citing, In re Sierra Steel, Inc.,* 96 B.R. 275, 277 (9th Cir. BAP 1989) and explaining that the presumption vanishes only after transferee comes forward with substantial evidence of solvency). Thus, there is no dispute that the transfers were made while Debtor was insolvent, satisfying the third element.

Here, Debtor transferred the titles of the two vehicles, through his assignments of ownership to Defendant, on August 15, 2012. [Doc # 30, Pl. Ex. B, pp. 30-35]. The assignments of ownership took place six days prior to the date of Debtor's bankruptcy filing. [Case No. 12-33850, Doc. # 1]. In Ohio, the seller of a motor vehicle must assign a certificate of title to the buyer, and the buyer must apply for and ultimately obtain a new certificate of title. *See,* O.R.C. §4505.03. Also, §4505.04(A) provides, in pertinent part, that:

> A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, ....; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to the motor vehicle, for a valuable consideration.

In the case at hand, Defendant was not assigned certificates of title to the two vehicles until August 15, 2012. Although he had physical possession of the two vehicles since spring of 2012 and possession of the titles since the spring of 2008, this is not sufficient for ownership of a vehicle as established by the Ohio Revised Code. Moreover, it has been held that: "Under Ohio's Certificate of Motor Vehicle Title Act, except for vehicles held as inventory, the notation of a lien on the vehicle's certificate of title is the exclusive manner by which a security interest is perfected in a motor vehicle." *See, Drown v. Perfect (In re Giaimo)*, 440 B.R. 761 (6th Cir. BAP 2010). Therefore, for two reasons, Defendant did not have a perfected security interest in the motor vehicles under Ohio's Certificate of Motor Vehicle Title Act: 1) there was no security agreement granting a security interest; and, 2) there was no lien notated on either vehicle's certificate of title. Thus, the transfer of ownership to Defendant through the signing over of the titles on August 15, 2012, was well within the 90 days before the filing of the petition. Absent proof that the equity in the vehicles was

8

transferred at an earlier date,[2] Plaintiff will have satisfied the fourth element of §547(b).

The fifth and final element of a preference claim requires Plaintiff to establish that the transfer enabled the recipient to receive more than it would have as a creditor in Debtor's chapter 7 proceeding. To make this determination, a court must consider the liquidation value of the debtor's assets on the petition date. *Lyndon Prop. Ins. Co. v. E. Ky. Univ.*, 200 Fed.Appx. 409, 419 (6th Cir. 2006). Defendant's status as a secured or unsecured creditor is also paramount to a §547(b)(5) analysis. *See, Silagy v. Jay's Auto Sales, Inc. (In re Jackson)*, 2006 WL 3064087, *3, 2006 Bankr. LEXIS 2955, *9 (Bankr. N.D. Ohio Oct. 23, 2006).

Generally, a secured creditor in a chapter 7 case is entitled (i) to receive consideration equal to the value of its collateral; or (ii) to recover its collateral. *See, Yoppolo v. Comerica Bank (In re Norwalk Furniture Corp.)*, 428 B.R. 419, 425 (Bankr. N.D. Ohio 2009) (*citing* 11 U.S.C. §§506, 725). Accordingly, "[p]ayments to a creditor who is *fully* secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation." *Triad Int'l Maint. Corp. v. S. Air Transp., Inc. (In re S. Air Transp., Inc.)*, 511 F.3d 526, 533 (6th Cir.2007) (emphasis added).

Conversely, unsecured creditors in a chapter 7 proceeding rarely receive the full value of their claims. *In re Norwalk Furniture*, 428 B.R. at 425. Unsecured creditors are only entitled to receive a pro rata share of the debtor's nonexempt estate assets. *French v. State Farm Mut. Auto. Ins. Co. (In re LaRotonda)*, 436 B.R. 491, 496 (Bankr. N.D. Ohio 2010) (*citing* 11 U.S.C. §726). "'Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.'" *Lyndon Prop. Ins.*, 200 Fed.Appx. at 419 (*quoting, In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 465 (6th Cir.1991)); *see also*, *In re Blakely*, 479 B.R. 267, 276 (Bankr. N.D. Ohio 2013).

## A. Defendant's Claim That He Held Attorney's Lien On The Vehicles.

### 1. Charging Lien.

In his Motion, Defendant attacks the fifth element of Plaintiff's §547(b) claim, by alleging

---

[2]/ Defendant asserts that he obtained a security interest through an attorney charging lien, or retaining lien, at an earlier date, either when he took possession of the unendorsed certificates of title, or when he took possession of the two vehicles. Those issues will be discussed in connection with the fifth element, below.

9

that he considered himself secure in this case "with his attorney's lien linked to possession of the free and clear titles." [Doc. # 31, p. 3]. Specifically, Defendant alleges "that the signing off of the titles by the Debtor is analogus [sic] to a 'deed in lieu' situation, [with] Defendant having a valid lien on the cars and the titles by . . . possession . . . more than 90 days prior to the filing of the Chapter 7 petition." [*Id.*]. As Defendant had no security agreement, as would be required to obtain a security interest under Article 9 of the UCC, he argues that he should fall into the classification of a lien creditor with the right to establish a secured position as to the automobiles. [Doc. # 33, p. 7]. Defendant claims that crucial to this court's determination is whether or not Defendant has or had a valid attorney's lien under Ohio law. [Doc. # 31, p. 5]. If Defendant's alleged attorney's lien on the vehicles was valid, he argues that he did not receive more than he would have as a creditor in Debtor's Chapter 7 proceeding.

In Plaintiff's Response, Plaintiff acknowledges Ohio's recognition of attorney's liens and that an attorney's lien is superior to a Trustee as a hypothetical lien creditor in some situations, but posits that Defendant had neither a valid attorney's charging lien nor a possessory lien on the motor vehicles. [Doc. # 32, pp 2-3].

State law governs the creation and definition of property rights, including the attorney's liens asserted in this case. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L.Ed.2d 136 (1979)("Property interests are created and defined by state law."); *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1450 (6th Cir. 1994)("[P]roperty rights in bankruptcy are determined only by reference to the state law of the jurisdiction."); *Elec. Metal Prods., Inc. v. Bittman (In re Elec. Metal Prods., Inc.)*, 916 F.2d 1502, 1504 (10th Cir.1990)("The validity and extent of an attorney's lien in bankruptcy is determined by state law."). Here, the applicable law would be the that of the State of Ohio.

In analyzing Ohio law, this bankruptcy court must apply the "law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995). But, if "the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data.'" *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 901 (Bankr.W.D.Mich.1996) (*quoting, Garden City*, 55 F.3d at 1130 (6th Cir.1995) (citations omitted)). The "relevant data" to be considered includes state appellate court decisions, "state's supreme court dicta, restatements of law, law review commentaries, and the majority rule among other states." *Garden City*, 55 F.3d at

10

1130; *Strong v. Page (Matter of Page)*, 239 B.R. 755, 763 (Bankr.W.D.Mich.1999).

There are two kinds of attorney liens in Ohio: 1) charging liens;[3] and, 2) retaining liens. "A retaining lien against a client's papers and property differs from a charging lien upon a monetary judgment obtained by the attorney, which has been judicially recognized." *Foor v. Huntington Bank*, 27 Ohio App.3d 76, 79, 499 N.E.2d 1297, 1301 (10th Dist. 1986). "In Ohio, the attorney's lien has not been recognized by statute but is purely a creature of common law." *Superintendent of Ins. v. Baker & Hostetler*, 668 F.Supp. 1054, 1056 n.1 (N.D. Ohio 1987).

The Ohio Supreme Court has analyzed attorney's charging liens on three occasions. In 1880, the Supreme Court agreed that an attorney could sustain a lien upon a fund being held by a state court receiver "by reason of the services rendered in securing it, [such] that a court of equity ... would be fully warranted in directing a reasonable compensation to be paid out of it." *Olds v. Tucker*, 35 Ohio St. 581, 583 (1880). Two years later, in *Diehl v. Friester*, 37 Ohio St. 473 (1882), the Ohio Supreme Court affirmed the trial court's decision that permitted judgments held by the parties against each other to be offset, except to the extent that the attorneys for one of the parties claimed a charging lien on the judgment proceeds. The *Diehl* decision stated:

> [A]n attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, or upon a sum of money which he has collected, and under some circumstances courts will aid him in securing or maintaining such claim. Thus he will be protected in retaining his fee out of money which he has collected for his client.

*Id.* at 477.

The Ohio Supreme Court addressed attorney's liens again in *Cohen v. Goldberger*, 109 Ohio St. 22, 141 N.E. 656 (1923). In the *Cohen* case, Cohen had obtained a judgment against the United States Steel Company. Cohen's attorneys who represented him in the prior action claimed that Cohen had agreed to pay them a one half contingency fee of the amount recovered. Cohen then admitted in an answer filed with the court that this had been the agreement. When a creditor of Cohen's business partnership asserted that it had a claim in the judgment proceeds that was superior to Cohen's attorneys, the court found in favor of the attorneys. The Supreme Court affirmed the trial

---

[3]/ Generally, an attorney's charging lien "allow[s] a lawyer who has represented a successful claimant to retain out of the proceeds of the suit an amount sufficient to pay the lawyer's claimed fee and disbursements." *Restatement (Third) of the Law Governing Lawyers* §43 cmt. d (2000).

court's decision, explaining that allowing the creditor's claim to be superior to that of the attorneys':

> would put aside entirely the question of [the attorneys'] interest in, or lien upon, the fund produced by their skill and labor, and would result in taking from them that which had thus been procured ... probably leaving without remuneration of any sort the attorneys but for whose efforts, presumably, the fund would not have been procured or made available for the payment of the creditors either of the firm or the individuals composing it. The mere statement of that proposition discloses its inequity.

*Id.* at 657-58.

These cases suggest, as do later Ohio Court of Appeals cases, that "[a] charging lien in favor of an attorney is a lien upon judgment or other proceeds awarded to a client or former client." *First Bank of Marietta v. Roslovic & Partners, Ind.*, 2004 Ohio 2717, ¶ 41, 2004 WL 1172885, 2004 Ohio App. LEXIS 2401 (10th Dist. 2004); *see also, Fire Prot. Res., Inc. v. Johnson Fire Prot. Co.,* 72 Ohio App.3d 205, 594 N.E.2d 146, 148 (1991); *see generally, In re Simms Constr. Servs. Co., Inc.,* 311 B.R. 479, 488 (6th Cir. BAP 2004); *Olszewski v. Jordan*, 315 Conn. 618, 629, 109 A.3d 910, 915-916 (Conn. 2015)(citing treatises discussing the theoretical underpinnings of equitable charging liens).

Plaintiff correctly points out that Defendant did not obtain an attorney's charging lien over Debtor's vehicles, as it was not a lien upon a judgment or other proceeds awarded to a client or a former client. Although a stipulated order was entered in the Court of Common Pleas for Lucas County, Ohio Division of Domestic Relations during Debtor's previous divorce, the Stipulation and Order attached to Defendant's Motion only relates to a 1960 Porsche and a 1971 MG, not the 1977 Ferrari and 1954 MG at issue in the case at hand. [Doc. # 31-1, Def. Ex. A, p. 3]. Because the two vehicles in issue were not part of a "judgment or other monies awarded to a client, or former client" and were not assets created by Defendant's "services and skill". Thus, no charging lien attached to the vehicles. *See e.g., Cuyahoga County Bd. of Comm'rs v. Maloof Props.*, 197 Ohio App. 3d 712, 715-716, 968 N.E.2d 602, 604-605 (8th Dist. 2012).

### 2.   Retaining Lien.

Defendant has also asserted that he had a "retaining lien" based upon language in *Foor v. Huntington Bank*, 27 Ohio App.3d 76, 499 N.E.2d 1297 (10th Dist. 1986). [Doc. #31, p. 8]. Defendant points to the following language in *Foor*:

12

A retaining lien is a common-law lien of an attorney attaching to all property, papers[4], documents and monies of the client coming into the attorney's hands during the course of his representation of the client and gives the attorney the right to retain possession of such property, papers, documents and money as security for fees and expenses due the attorney in connection with the professional relationship between the attorney and client.

*Foor*, 27 Ohio App.3d at 79, 499 N.E.2d at 1302.

Defendant focuses on the term "all property" in *Foor*, asserting that he thereby had a "retaining lien" on the two vehicles. However, an earlier decision discussing attorney retaining liens was less expansive. *See*, *Newcomb v. Krueger*, 36 Ohio App. 469, 471-472, 173 N.E. 246, 247 (8th Dist. 1930)(*citing*, 6 Corpus Juris for the proposition that the attorney's lien "includes ordinary legal documents of the client in the possession of the attorney, and notes, bonds, or money collected by the attorney."); *but see*, *Walcutt v. Huling*, 5 Ohio App. 326, 331 (10th Dist. 1913)(quoting an Indiana decision that stated an retaining lien applied to "papers, books, documents, money, and other property in his possession").

A "retaining lien" is a common law lien. *Foor*, 27 Ohio App.3d at 79, 499 N.E.2d at 1302. Thus, it can be abrogated, modified, or otherwise limited through legislation, rule making, and subsequent court decisions. In addressing the relationship between the common law and new legislation, the Ohio Supreme Court has held that:

> Statutes are to be read and construed in the light of and with reference to the rules and principles of the common law in force at the time of their enactment, and in giving construction to a statute the legislature will not be presumed or held, to have intended a repeal of the settled rules of the common law unless the language employed by it clearly expresses or imports such intention.

*State ex rel. Morris v. Sullivan*, 81 Ohio St. 79, 90 N.E. 146 (1909), paragraph three of the syllabus.

In Ohio, the creation and use of a retaining lien to secure property appears to have been

---

[4]/ Subsequent to the *Foor* decision, the use of a "retaining lien" on a client's files has been substantially limited by Prof. Cond. Rule 1.16(d). *See*, *Recovery Ltd. Partnership v. Wrecked & Abandoned Vessel S.S. Cent. Am.*, 790 F.3d 522, 529-530 (4th Cir. 2015)(discussing changes in the ethical landscape in Ohio, and nationally, regarding retaining liens). This is one of many modern changes in the legal/ethical landscape that may make "retaining liens" less useful to attorneys than they were in the past. One of the difficulties in this case is reconciling older case law with the current Ohio Rules of Professional Conduct.

limited by: 1) legislation; 2) controlling authority from the Ohio Supreme Court; and 3) the Ohio Rules of Professional Responsibility.

### a. Ohio's Certificate of Motor Vehicle Title Law.

The Certificate of Motor Vehicle Title Law, first enacted in 1937[5], appears to impose a legislative limitation on the common law attorney's retaining lien. At the time the Certificate of Motor Vehicle Title Law was passed, there were no "settled rules" regarding whether an attorney retaining lien attached to motor vehicles. As previously discussed, two retaining lien cases decided prior to 1937, *Newcomb v. Krueger* and *Walcutt v. Huling,* did not agree on the types of property an attorney's retaining lien would attach to - money, papers and certificates, or a broader category of "all property".

From 1937 until the adoption of the Uniform Commercial Code in 1962 (which was accompanied by amendments to the Certificate of Motor Vehicle Title Law[6]) the law in Ohio was clear: "since the enactment of Section 4505.04, Revised Code, the mere possession of an automobile no longer carries with it any right *or interest* in that automobile which a court can recognize." *Veltri v. Cleveland*, 167 Ohio St. 90, 146 N.E.2d 442 (1957)(emphasis added);[7] *see also*, *Brewer v. De Cant*, 167 Ohio St. 411, 415, 149 N.E.2d 166, 169 (1958).

Thus, the enactment of the Certificate of Motor Vehicle Title Law, setting forth the method for perfecting a lien in a motor vehicle and establishing rights as between lien holders, appears to have precluded the creation of common law liens in motor vehicles that were not based upon "settled rules" at the time the legislation was passed.

As previously discussed, Ohio law limits the methods by which a creditor can obtain a

---

[5]/ *See*, *Kelley Kar Co. v. Finkler*, 155 Ohio St. 541, 545, 99 N.E.2d 665, 667 (1951)("until the act of April 28, 1937, title to a motor vehicle was evidenced only by a bill of sale."); *State ex rel. City Loan & Sav. Co. v. Taggart*, 134 Ohio St. 374, 375-376, 17 N.E.2d 758, 759 (1938)("Under the new law, all liens, mortgages and encumbrances on motor vehicles must be noted by the clerk of courts upon the certificate of title, and shall take priority according to the order of time in which they are noted.").

[6]/ "[T]he Ohio Legislature amended the Title Act at the time it adopted the Uniform Commercial Code, both effective July 1, 1962." *In re Charlie Bisang Chrysler-Plymouth, Inc.*, 37 B.R. 599, 601 (N.D. Ohio 1983).

[7]/ Many of the legal issues relating to Section 4505 arise from the interplay of the provisions of the UCC and the Certificate of Motor Vehicle Title Law. However, it is difficult to see why the enactment of the UCC in 1962 would serve to revive the power of an Ohio attorney to place a common law retaining lien on a motor vehicle, which *Veltri* held was abrogated by the Certificate of Motor Vehicle Title Law.

14

perfected security interest in a vehicle.

> Under Ohio law, perfection of a security interest is generally accomplished through the filing of a financing statement. However, this method of perfection is inapplicable in the case of motor vehicles. Under Ohio's Certificate of Motor Vehicle Title Act, except for vehicles held as inventory, the notation of a lien on the vehicle's certificate of title is the exclusive manner by which a security interest is perfected in a motor vehicle.

*See*, *Drown v. Perfect (In re Giaimo)*, 440 B.R. 761 (6th Cir. BAP 2010); *Graham v. Huntington Nat'l Bank (In re MedCorp, Inc.)*, 472 B.R. 444, 451 (Bankr. N.D. Ohio 2012); *Parker v. Lewis (In re Jones)*, 2011 WL 5869610 at *4, 2011 Bankr. LEXIS 4669 at *11 (Bankr. N.D. Ohio Nov. 22, 2011).

Ohio's Certificate of Motor Vehicle Title Law applies to "contests between the alleged owner and lien claimants" and "rights as between lien holders". *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St. 3d 513, 518, 751 N.E.2d 1019, 1024 (2001). An early federal District Court decision stated that the statute's lien notation provisions: "evidence a clear legislative purpose to protect lienholders whose liens are otherwise valid and who have complied with the certificate of title law in having their liens noted upon the certificate by the clerk of courts of the county where the certificate was issued." *In re Mitchell*, 104 F. Supp. 969, 972 (N.D. Ohio 1952).

While notation on a vehicle's certificate of title is the exclusive manner in which a security interest is perfected under Ohio law, Defendant did not have a "security interest". He is, instead, claiming that he had a common law lien.

In Ohio, there is a common law lien that applies to motor vehicles. While it is sometimes referred to as a "possessory lien", the common law "artisan's" or "garageman's" lien actually arises when labor and materials are expended in repairing a vehicle. However, unlike the attorney retaining lien, the common law "garageman's lien" for labor or materials used to repair a motor vehicle was firmly established by clear Ohio Supreme Court authority prior to the 1937 enactment of the Certificate of Motor Vehicle Title Law. *See*, *Cleveland Auto Top & Trimming Co. v. American Finance Co.*, 124 Ohio St. 169, 177 N.E. 217 (1931)(common law "artisan's lien" recognized by the Ohio Supreme Court for work and labor expended on an automobile); *Metropolitan Sec. Co. v. Orlow*, 107 Ohio St. 583, 587, 140 N.E. 306, 307 (1923)("The Legislature of Ohio has never created a lien in favor of an artisan for labor and materials rendered and furnished upon chattel property, but

15

by the well-settled provisions of the common law. . . .").  Notably, the possessory lien for labor and materials used in repairs - which would increase the value of the vehicle - appears to be somewhat analogous to the concept of a "attorney charging lien", where the lien attaches to a client's interest in a judgment created through the work of an attorney.  In contrast, there is no common law lien in Ohio that is enforceable against a motor vehicle for other automotive services, like storage or towing. *See*, *Candler v. Ash*, 53 Ohio App.2d 134, 372 N.E.2d 617 (6th Dist. 1976); *Leesburg Fed. Sav. Bank v. McMurray*, 2012 WL 5897608 at *3, 2012 Ohio App. LEXIS 4719 at **6-8 (12th Dist. Nov. 26, 2012).

As previously discussed, in contrast to the well established "artisan's" or "garageman's" lien, there was no "settled rule" under the common law regarding the application of attorney "retaining liens" to motor vehicles at the time of the enactment of the Certificate of Motor Vehicle Title Law in 1937.  Thus, if allowing retaining liens to apply to motor vehicles were contrary to the intent of the Ohio legislature, there would be no presumption in favor of the common law lien continuing under the rule stated in *State ex rel. Morris v. Sullivan*, 81 Ohio St. 79, 90 N.E. 146 (1909).

"The principle purpose of a lien notation on a motor vehicle's certificate of title, and with perfection requirements in general, is to provide interested third parties with notice that another creditor claims an interest in the debtor's property."  83 Ohio Jur. 3d, Secured Transactions §93 (2015); *see also*, *(Noland v. HSBC Auto Fin. Inc.) In re Baine*, 393 B.R. 561, 566 (Bankr. S.D. Ohio 2008).  Contrary to the intent of the Certificate of Motor Vehicle Title Law, Defendant's "retention lien" theory would work to create "secret" liens on motor vehicles - liens which would not be ascertainable through the usual methods[8] of looking for a notation of lien on the vehicle title, or using the State of Ohio's automated title processing system.[9]  This appears to be contrary to the intent of the Ohio legislature in enacting the Certificate of Motor Vehicle Title Law, and specifically O.R.C. §4505.13(B).

The Ohio legislature's intent is also expressed through the structure of the statute.  Nothing in §4505.13 suggests that mere possession of a certificate of title to a motor vehicle perfects a lien

---

[8]/ Notably, the vehicles were stored in various locations not owned by Defendant.

[9]/ *See*, *Luper v. Guardian Fin. Co. (In re McAlmont)*, 385 B.R. 191, 195 n.2 (Bankr. S.D. Ohio 2008).

on that motor vehicle. What is generally controlling[10] as to ownership is the listed name of the owner on the certificate issued.[11] For a security interest, notation of the lien on the title is what perfects a motor vehicle lien.

Simply holding an unassigned and un-notated motor vehicle title does not: 1) transfer ownership; or 2) create a lien under Ohio law. Thus, an attorney holding titles to vehicles, without more, does not create a retaining lien on those vehicles. The unassigned motor vehicle titles were simply documents reflecting Debtor's ownership of the vehicles at the time, and - even accepting Defendant's argument that a retaining liens can apply to motor vehicles - possession of the titles was not sufficient for the vehicles to have come "into the attorney's hands" for retaining lien purposes. *Foor*, 27 Ohio App.3d at 79, 499 N.E.2d at 1302. Under the language in *Foor*, obtaining the bare titles may have given Defendant "the right to retain possession of such property", but "such property" would be the physical paper titles, not the two vehicles. *Id.*

More importantly , the Ohio Supreme Court specifically held that mere possession of a vehicle does not give rise to any right or interest which a court can recognize. *Veltri v. Cleveland*, 167 Ohio St. 90, 146 N.E.2d 442 (1957). The broad language in the court of appeals' decision in *Foor* cannot overturn the Ohio Supreme Court's holding in *Veltri* that no "interest" can arise from mere possession.

Additionally, based upon distinctions made in many Ohio statutes, the use of the term "all property" in *Foor* does not necessarily include motor vehicles. The Ohio legislature has recognized that motor vehicles (and similar types of personal property subject to a certificate of title statute) are different from other kinds of personal property. Accordingly, Ohio statutes have specifically excluded motor vehicles from a number of provisions that cover other kinds of personal property. *See e.g.*, O.R.C. §1333.41(E)("This section does not apply to a bailee for hire who performs any service or provides any materials with respect to motor vehicles, as defined in section 4501.01 of the Revised Code; . . ."); O.R.C. §1309.302 (UCC 9-303)(certificate of title governs perfection of a security interest, not UCC financing statements); O.R.C. §1309.337 (UCC 9-337)(special protections

---

[10]/ There are a number of Ohio decisions upholding "express trusts" as controlling on issues of ownership under certain circumstances.

[11]/ O.R.C. Section 4505.4(A).

17

related to certificates issued not reflecting a security interest); O.R.C. §4505.13(A)(1) ("Chapter 1309. and section 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section.").

Ohio courts have also recognized that under Ohio law, "motor vehicles are a distinct and different type of good." *See*, *First Merit Bank v. Angelini*, 159 Ohio App. 3d 179, 188, 823 N.E.2d 485, 491 (3rd Dist., 2004); *La Gar Mktg. v. W. Fin. & Lease, Inc.*, 2012-Ohio-4800; 2012 WL 4898785, 2012 Ohio App. LEXIS 4199; 78 U.C.C. Rep. Serv. 2d (Callaghan) 953 (9th Dist. 2012). This is one basis for setting up a special system, *i.e.*, the Certificate of Motor Vehicle Title Act, for determining rights as between lien holders. *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St. 3d 513, 518, 751 N.E.2d 1019, 1024 (2001).

The parties have cited no case law in which an attorney's retaining lien, obtained through possession alone, was held to apply to a certificated motor vehicle or vessel, or to real estate. Although the search was not exhaustive, the court has not found any case in which such an attorney's retaining lien was held to apply to a certificated motor vehicle or vessel[12] in any jurisdiction. Accordingly, the Certificate of Motor Vehicle Title Law having a purpose contrary to the application of the common law attorney retaining lien to motor vehicles, and no "settled rules" applying an attorney retaining lien to motor vehicles having been effective at the time Ohio's Certificate of Motor Vehicle Title Law was passed, any argument that a common law attorney retaining lien should extend to motor vehicles through "possession" by an attorney was negated by the Ohio legislature in 1937, and that change was recognized by the Ohio Supreme Court in *Veltri v. Cleveland*, 167 Ohio St. 90, 146 N.E.2d 442 (1957).

        **b.**      **The Common Law Attorney's Retaining Lien And Ohio's Rules Of Professional Responsibility.**

Even if a valid "retaining lien" were held to exist in the two vehicles, the transfer of title ownship to Defendant would still be a preference. One reason the transfer would be a preference is

---

[12]/ One case that offered an interesting perspective was *Gulf Marine and Indus. Supplies, Inc. v. Golden Prince M/V*, 230 F.3d 178, 179 (5th Cir. 2000), where the Fifth Circuit Court of Appeals stated that it "declined to become the first court in the history of American maritime law to declare that legal services are necessaries" giving rise to a lien against a vessel for attorney fees.

that the value of the retaining lien on the two vehicles, if it existed, was worth less than the interest Defendant obtained after the titles were signed over to him less than a week before the filing of debtor's Chapter 7 bankruptcy. This is because the common law retaining lien has certain inherent limitations that would make it less "valuable" than the ownership interest that was transferred to Defendant just prior to the filing of this bankruptcy case.

"[A] retaining lien is a passive lien and cannot ordinarily be actively enforced. Instead, the lien exists as leverage over the client through the embarrassment or inconvenience caused by the attorney's withholding property and papers of the client which are in his possession." *Foor*, 27 Ohio App.3d at 79, 499 N.E.2d at 1301; *see also*, *Newcomer & McCarter v. Al-Marayati*, 72 Ohio App.3d 293, 295, 594 N.E.2d 657, 658-659 (6th Dist. 1991); *Putnam v. Hogan*, 122 Ohio App. 3d 351, 701 N.E.2d 774, 775 (10th Dist. 1997) Specifically, it has been held that a "retaining lien" does not include the power of sale. *Foor*, 27 Ohio App.3d at 80, 499 N.E.2d at 1302 (*quoting*, *The Flush*, 277 F. 25 (2nd Cir. 1921)).

Under today's Ohio rules of professional responsibility, the value of the ability to embarrass, inconvenience, or coerce a client or former client is greatly diminished. For example, the attorney retaining lien on a client's file, which *Foor* specifically lists, has been weakened substantially by the Ohio Supreme Court's holding that "an attorney who is discharged must yield the case file." *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St. 3d 570, 629 N.E.2d 431, 435 (1994); *see also*, *Akron Bar Ass'n v. Gibson*, 128 Ohio St.3d 347, 944 N.E.2d 228 (2011)(failed to forward documents, failed to respond to request for return of files); *Disciplinary Counsel v. Bursey*, 124 Ohio St.3d 85, 919 N.E.2d 198 (2009)(failure to return client's file as requested was a violation); *Lake County Bar Ass'n v. Kubyn*, 121 Ohio St.3d 321, 2009 Ohio 1154, 903 N.E.2d 1215 (2009)(failure to return client case file upon discharge).

Subsequent to the decision in *Reid*, Ohio adopted the Ohio Rules of Professional Conduct, which became effective February 1, 2007,[13] and therefore were in effect at all relevant times in this case. Rule 1.16(d) specifically states that a "[c]lient's papers and property shall be promptly

---

[13]/ *Disciplinary Counsel v. Cantrell*, 125 Ohio St. 3d 458, 462 n.2, 928 N.E.2d 1100, 1104 n.2 (2010) ("February 1, 2007, the effective date of the Ohio Rules of Professional Conduct."); *Hazlett v. Suburban Tractor Co. (In re Palmer)*, 365 B.R. 816, 823 n.3 (Bankr. S.D. Ohio 2007)("On August 1, 2006, the Ohio Supreme Court adopted the American Bar Association Model Rules of Professional Conduct, which, effective February 1, 2007, replaced the Code of Professional Responsibility.").

19

delivered to the client". This provision, along with other modern ethical rules, undermines the ability of an attorney to "embarrass" a client or former client into making payment by holding onto the client's property.

Even if an attorney could refuse to turn over a client's file or other property based upon a possessory retaining lien,[14] the extent to which an attorney could embarrass a client, or former client, would appear to be limited if the attorney did not comply with Ohio's Rules of Professional Conduct in taking the security interest in the property[15] in question.

A lawyer must take certain steps in knowingly acquiring a security interest in a clients property. Rule 1.8 of the Ohio Rules of Professional Conduct states:

**Rule 1.8. Conflict of interest; Current clients; Specific rules**

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless all of the following apply:

> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed to the client in writing in a manner that can be reasonably understood by the client;

> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction;

> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

The deposition of Defendant did not reflect that there was a written disclosure, or any written

---

[14]/ Under Rule 1.16(d), the duty to turn over a client's property is prefaced by: "As part of the termination of representation". Whether a Chapter 7 trustee could trigger a "termination of representation" is an interesting issue, but not one that it is necessary to address here.

[15]/ This analysis may not apply to a charging lien, where the "property" – the judicial award – does not come into existence until the judgment is obtained, and the lien attaches at that time. Ohio cases have held that a charging lien arises even "in the absence of an agreement with their client that they should have such a lien." *See e.g.*, *Fire Protection Resources, Inc. v. Johnson Fire Protection Co.*, 72 Ohio App. 3d 205, 594 N.E.2d 146, (6th Dist. 1991). That issue is not before the court in this case.

20

advice regarding the desirability of seeking the advice of independent counsel, or written informed consent by the client. [*See*, Doc. # 30, p 43] (no written fee agreement); *Id*., at p. 47 (no written security agreement, "just an understanding"); *Id*., at p. 49 (Defendant describing how the two vehicles came into his possession)]. It should also be noted that it does not appear that the two vehicles were the "subject matter of litigation"[16] - these were just two vehicles that the Debtor owned, that were physically transferred to Defendant for the "protection" of the Defendant. [Doc. # 30, p. 49].

The comment to Rule 1.8 (under the heading "Acquiring Proprietary Interest in Litigation") supports that the two vehicles were not the "subject matter of litigation" and that Rule 1.8(a) applied to the agreement for Defendant to take possession of the cars for purposes of creating an attorney retaining lien: "When a lawyer acquires by contract a security interest in property other than that recovered through the lawyer's efforts in the litigation, such an acquisition is a business or financial transaction with a client and is governed by the requirements of division (a)."

Bankruptcy courts have held that attorneys who choose to take a security interest in a their client's property must comply with applicable state bar rules. *See*, *In re Pace*, 2015 WL 6728007 at *3, 2015 Bankr. LEXIS 3727 at *7 (Bankr. W.D.N.C. Nov. 2, 2015)(citing cases). *Pace* specifically held: "because the attorney failed to comply with the applicable state rules of professional conduct [Rule 1.8(a)], he may not retain a security interest in his debtor's property to secure fees incurred pre-petition." While Defendant was not debtor's bankruptcy counsel (as the attorney was in *Pace*), the language of North Carolina's Rule 1.8(a) is virtually identical to Ohio's Rule 1.8(a).

To be clear, this court is not finding that Defendant acted unethically. This specific issue was not part of the allegations in the Trustee's Complaint, nor has Defendant had the opportunity to respond to this issue. Instead, the problem of apparent non-compliance with Rule 1.8(a) is cited as an additional independent reason why the value of the bundle of rights arising from Defendant's retaining lien (assuming, contrary to this decision, that a lien validly attached to the two vehicles through possession) would be less than the value of the bundle or rights acquired by Defendant when the two vehicle certificates of title were signed over to him, giving him a full ownership interest in the vehicles.

---

[16]/ *See generally*, *Richmond's Case*, 153 N.H. 729, 735-736 904 A.2d 684, 689-690 (2006)(New Hampshire Supreme Court discusses the relationship between Rules 1.8(a) and Rule 1.5.)

c.　　**Even If There Was A Retaining Lien On The Motor Vehicles, The Lien Was Not Perfected Under Either Ohio Law Or The Relevant Bankruptcy Code Provisions, Making The Transfer Of Title A Preference.**

Under O.R.C. §4505.13(B), except for vehicles held as inventory,[17] a perfected security in a motor vehicle is obtained through the notation of the security agreement on the certificate of title. O.R.C. §4505.13(B). "All security interests, liens, mortgages, and encumbrances entered into the automated title processing system in relation to a particular certificate of title, regardless of whether a physical certificate of title is issued, take priority according to the order of time in which they are entered into the automated title processing system by the clerk." §4505.13(B).

Thus, prior to the transfer of ownership to Defendant through the assignment of title to the vehicles to Defendant a few days before the bankruptcy filing, if Defendant had any legally cognizable interest in the vehicles, it was not perfected. Accordingly, a creditor with a notated lien on the title would "take priority" over a common law retaining lien claimed against the vehicles.[18] *Cf, Commonwealth Loan Co. v. Berry*, 2 Ohio St. 2d 169, 207 N.E.2d 545 (1965)("The specific priority granted in Section 4505.13, Revised Code, to liens noted upon the certificate of title of a motor vehicle makes such liens valid against other liens and prevails over the general provision of Section 1309.29, Revised Code, relating to artisan's liens."); *Citizens Banking Co. v. Ott's Body Shop*, 2015 WL 1125045, 2015 Ohio App. LEXIS 862 (6th Dist. March 13, 2015)(1970 Pontiac GTO taken to a bodyshop for repairs and restoration in 2007. Citizens lien was first notated on the GTO's title in 2011. Based on §4505.13(B), Citizens notated lien took priority over the prior-in-time garageman's lien for repairs); *Associates Commer. Corp. v. Green*, 2000 WL 1641, 1999 Ohio App. LEXIS 6447 (5th Dist. Dec. 6, 1999).

This is an additional reason why Defendant's assertion that there had been a prior transfer to Defendant, for preference purposes, through the claimed attorney's retaining lien, must be rejected. Section 547(e)(1)(B) states:

_____

[17]/ O.R.C. Section 4505.13(A)(2) makes Chapter 1309 [U.C.C. Article 9] applicable to "a motor vehicle held as inventory for sale by a dealer".

[18]/ If, contrary to this decision, any such retaining lien could be validly asserted by an attorney against a certificated motor vehicle based solely on possession.

(e) (1) For the purposes of this section–

\* \* \* \* \* \* \*

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

The United States Supreme Court interpreted Section 547(e)(1)(B) in *Fidelity Fin. Servs. v. Fink*:

"When" and "cannot acquire" are ostensibly straightforward references to time and action in the real world . . . A creditor "can" acquire such a lien at any time until the secured party performs the acts sufficient to perfect its interest. . . . Not until the secured party actually performs the final act that will perfect its interest can other creditors be foreclosed conclusively from obtaining a superior lien. It is only then that they "cannot" acquire such a lien. Thus, the terms of § 547(e)(1)(B) apparently imply that a transfer is "perfected" only when the secured party has done all the acts required to perfect its interest . . . .

*Fidelity Fin. Servs., Inc. v. Fink*, 522 U.S. 211, 216, 118 S. Ct. 651, 654, 139 L. Ed. 2d 571, 576 (1998); *see also*, *Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 466 (6th Cir. 2008).

It would be possible for a "creditor on a simple contract" to "acquire a judicial lien" superior to the interest of the Defendant's retaining lien that was not notated on the certificates of title. One way in which a superior perfected lien could be obtained would be if duplicate titles to the two vehicles were obtained, and a lien of a "creditor on a simple contract" was notated on that duplicate title. Thus, under § 547(e)(1)(B), there was no prior "transfer" (outside the 90 day look back period) for preference purposes when Defendant took possession of the vehicles. For bankruptcy purposes, the "transfer" only occurred when the titles were signed over to Defendant.

Similarly, an un-notated retaining lien on a motor vehicle would appear to be voidable using the Trustee's strong-arm powers under 11 U.S.C. Section 544(a), .

Thus, as the holder of - at best - an unperfected lien on the vehicles, the transfer of an ownership interest in the vehicles to Defendant was a preferential transfer, made within the 90 days prior to filing. *See e.g.*, *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 139 L. Ed. 2d 571, 118 S. Ct. 651, 652-53 (1998)(affirming avoidance of the transfer of a security interest based upon

23

the failure to timely perfect the motor vehicle lien); *Parker v. Lewis (In re Jones)*, 2011 WL 5869610, 2011 Bankr. LEXIS 4669 (Bankr. N.D. Ohio Nov. 22, 2011)($3,000 payment made on unperfected motor vehicle loan was a preference); *In re Knee*, 254 B.R. 710 (Bankr. S.D. Ohio 2000)(enabling loan defense to delayed perfection rejected); *Field v. Autonation Fin. (In re Moore)*, 1999 Bankr. LEXIS 1681 (Bankr. S.D. Ohio Dec. 1, 1999)(enabling loan defense to delayed perfection rejected); *Field v. Fifth Third Bank (In re Nasr)*, 191 B.R. 689 (preference where lien not notated on title until after filing of petition).

As the Sixth Circuit Court of Appeals has noted: "One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of 'secret liens' by invalidating all transfers occurring within 90 days prior to the filing of the petitions. Thus, creditors are discouraged from waiting until the debtor's financial troubles become all-too-manifest before recording security interests." *In re Arnett*, 731 F.2d 358, 363 (6th Cir. 1984).

Therefore, for all of the reasons discussed above, the court finds that Defendant did not have an attorney's lien - either a charging lien or a retaining lien - on the two vehicles assigned over to him by the Debtor on August 15, 2012, just prior to the filing of Debtor's Chapter 7 case on August 21, 2012. Because he did not have a lien on the two vehicles, Defendant was not a secured creditor. Moreover, even if Defendant did have a retaining lien, the value of that retaining lien on the vehicles was less than what Defendant obtained, just a few days before the filing of the bankruptcy petition, when he obtained an ownership interest in the two vehicles. Meaning that even if Defendant had a retaining lien, he was not a fully secured creditor. The value[19] of a passive, coercive retaining lien, was less than the value of full ownership rights that Defendant obtained through the signing over of the motor vehicle titles, which included the new powers: to encumber the vehicles, as well as the power to sell them. Accordingly, Defendant improved his position just prior to the bankruptcy filing, allowing him to receive more than he would have if ownership of the two vehicles had not been

---

[19]/ In dealing with a retaining lien on a client's papers, other bankruptcy courts have not valued the papers using a market value approach required to be turned over under Section 542(e). *See e.g.*, *In re Harrera*, 390 B.R. 746 (Bankr. S.D. Fla. 2008)(citing cases). Instead, bankruptcy courts have used a variety of approaches, including looking at the value the papers to the estate. This approach has been applied where the fair market value of the papers would be nominal, while the value of the papers to the estate might be substantial, depending on the vagaries of litigation. That approach - which originated when attorney retaining liens were stronger than they are under today's ethical rules - does not appear to be warranted here, where the vehicles have a substantial, ascertainable fair market value and Section 542(e) does not apply.

transferred to him during the preference period. *See, Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 388 n. 5 (6th Cir. 2000); *Parker v. Lewis (In re Jones)*, 2011 WL 5869610 at *3, 2011 Bankr. LEXIS 4669 *7 (Bankr. N.D. Ohio 2011)("This fifth element of §547(b) implements the central concept of a preferential transfer – an improvement by the creditor of its position vis-a-vis the estate as a result of the transfer.").

Thus, unless the underlying Chapter 7 case would pay out a substantial dividend, Plaintiff has demonstrated that the transfers received by Defendant in this case allowed Defendant to receive more than he would have received in a Chapter 7 liquidation had the transfer not been made, and had Defendant received payment on the debt he was owed by Debtor to the extent provided by the bankruptcy code. Absent the Trustee's recovery of the value of the two vehicles in issue, the underlying Chapter 7 case will not pay out a substantial dividend.

In Debtor's petition, Schedules A and B listed total assets of $332,705.00. [Case No. 12-33850, Doc. # 8]. Debtor's Schedule C showed that all assets included in Schedules A and B were exempt, subject to the secured liens on said assets. [*Id.* at Doc. # 1.; Doc. # 30, Exhibit F]. Debtor's Summary of Schedules reflected total liabilities of $973,542.13. [Case No. 12-33850, Doc. # 8]. Defendant was not listed in Debtor's petition or elsewhere on Debtor's Schedules, and the transfers of the two vehicles were not included on Debtor's Statement of Financial Affairs. [*Id.,* Doc. ## 1, 8]. Plaintiff is the Trustee for the underlying Chapter 7 case, and he conducted Debtor's Meeting of Creditors which was held and concluded on October 15, 2012. [Doc. # 30, Exhibit F]. Plaintiff, in his capacity as Debtor's Chapter 7 Bankruptcy Trustee, determined that "[Defendant] received more money in this transaction prior to Mr. Hadley's Bankruptcy than he would have been entitled to under Debtor's Chapter 7 Bankruptcy." [*Id.*].

The assets listed in Debtor's petition were entirely exempt, and no other assets were deemed recoverable to disburse any funds to Debtor's creditors. In other words, without the recovery of the two vehicles, this would be a "no asset" Chapter 7 case. Therefore, Plaintiff has met his burden under §547(b)(5).

With Plaintiff having satisfied all five elements of his §547(b) claim, establishing that the transfers were preferential, the burden of proof shifts to Defendant to prove that the transfers are unavoidable under one of the valid defenses allowed by Section 547(c) of the Bankruptcy Code. Defendant has not, in his Answer, his Motion, his Response, or his Reply, provided the court with

any alleged defenses or evidence that the transfers are protected from avoidance by any of the defenses included in Section 547(c).

Accordingly, as Plaintiff has met his burden under 11 U.S.C. §547(b), and Defendant has not met his burden under 11 U.S.C. §547(c), partial summary judgment will be granted in favor of Plaintiff on his §547 action brought under Claim I of the Complaint. The transfer of title in the two vehicles will be avoided, and the Chapter 7 Trustee will be awarded the value of the transferred property under §550(a). As partial summary judgment is being granted in favor of Plaintiff on Claim I, and the court having ruled that Defendant did not have a valid attorney's lien on the vehicles, the court will deny Defendant's Motion for summary judgment.

### 3. Genuine Issues Of Material Fact Preclude The Entry Of A Money Judgment In Favor Of Plaintiff.

Because there are genuine issues of fact regarding the value of the two motor vehicles in non-running condition at the time of the transfers, the court will not enter a final judgment in this case. Further, Plaintiff seeks pre-judgment interest in this case. If it is to be awarded,[20] pre-judgment interest in a preference action is generally calculated from the date of the Trustee's demand letter, if a written demand was made, or from the date of the filing of the adversary. *See e.g.*, *In re Suburban Motor Freight, Inc.*, 124 B.R. 984, 1006 (Bankr. S.D. Ohio 1990); *In re Sentinel Mgmt. Group*, 398 B.R. 281, 294 (Bankr. N.D. Ill. 2008). The parties have not addressed whether a demand had been made in this case, and the form and timing of any demand.

### CONCLUSION

For the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 30] be, and hereby is, **GRANTED** in part; and

**IT IS FURTHER ORDERED** that the transfers of the 1954 MG and a 1977 Ferrari are held

---

[20]/ There is no statutory authority mandating the award of pre-judgment interest, and the determination whether or not to do so is within the sound discretion of the court, "depend[ing] on whether the preferred creditor could have ascertained the amount of the preferential payment without a judicial determination." *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1281 (8th Cir. 1988). This standard suggests a hearing would be appropriate on this issue under the circumstances presented here.

to be preferential transfers avoidable under 11 U.S.C. Section 547(b), and recoverable under 11 U.S.C. Section 550(a).

  **IT IS FURTHER ORDERED** Defendant's Motion for Summary Judgment [Doc. # 31] be, and hereby is, **DENIED.**

  **IT IS FURTHER ORDERED** that this matter is set for further hearing on determination of the amount of the Judgment that should be entered in favor of the Plaintiff-Trustee **on January** 21, **2016, at 1:30 p.m.**

###