# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

___

In re: ROBERT F. HADLEY, JR.,

         *Debtor.*

___

DOUGLAS A. DYMARKOWSKI, Trustee,

         *Plaintiff-Appellee,*

v.

BARRY E. SAVAGE,

         *Defendant-Appellant.*

No. 16-8010

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Toledo.
No. 12-33850—John P. Gustafson, Judge.

Decided and Filed: December 21, 2016

Before: DELK, PRESTON, and WISE, Bankruptcy Appellate Panel Judges

___

## COUNSEL

**ON BRIEF:** Barry E. Savage, Toledo, Ohio, for Appellant. Randy L. Reeves, Lima, Ohio, for Appellee.

___

## OPINION

___

   PAULETTE J. DELK, Bankruptcy Appellate Panel Judge. In this case, the Chapter 7 trustee filed an adversary proceeding to avoid and recover preferential or fraudulent transfers from Debtor's business attorney, Appellant herein. The bankruptcy judge granted the trustee's motion for partial summary judgment, finding that two preferential transfers occurred just six days prior to bankruptcy, and awarded the trustee the value of the transferred property pursuant to

11 U.S.C. § 550(a). A separate hearing was subsequently held to determine the value of the property transferred. The transferee attorney appeals the bankruptcy court's order granting partial summary judgment, the order determining the value of the property transferred, and the order denying his motion to amend and modify the judgment.

## I. ISSUES ON APPEAL

Appellant raises three issues on appeal:

    A. Did the bankruptcy court err in concluding that the transfers at issue were preferential and subject to avoidance under 11 U.S.C. § 547(b)?

    B. Did the bankruptcy court clearly err in its determination of the value of the property transferred?

    C. Did the bankruptcy court abuse its discretion in denying the transferee's motion for a new trial and for amendment and modification of the judgment?

## II. JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to this Panel, and neither of the parties has timely elected to have these appeals heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation omitted). The bankruptcy court's grant of summary judgment and subsequent orders resolved the underlying adversary proceeding on its merits and the orders appealed are therefore final, appealable orders. *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 325 (B.A.P. 6th Cir. 2007).

The bankruptcy court's legal conclusions are reviewed *de novo*, *Caradon Doors & Windows, Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 447 F.3d 461, 463 (6th Cir. 2006), including a decision that applies or interprets state law. *See Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 675 (6th Cir. 2006). "De novo means that the appellate court determines the law independently of the trial

court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted). "No deference is given to the trial court's conclusions of law." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co. (In re Mktg. & Creative Solutions, Inc.)*, 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citations omitted). Decisions to grant summary judgment are reviewed *de novo*.

A determination of value is a finding of fact, reviewed under the clearly erroneous standard. *Tedeschi v. Falvo (In re Falvo)*, 227 B.R. 662, 663 (B.A.P. 6th Cir. 1998). " A factual finding is clearly erroneous when 'a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015) (quoting *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009)).

The bankruptcy court's denial of a motion to amend and modify a judgment pursuant to Federal Rule of Civil Procedure Rule 59(e) (made applicable by Federal Rule of Bankruptcy Procedure 9023) is reviewed for abuse of discretion. *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781-82 (6th Cir. 2015). An abuse of discretion occurs where the reviewing court has "'a definite and firm conviction that the trial court committed a clear error of judgment.'" *CFE Racing Prods. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015) (quotation omitted).

### III. FACTS

The facts of this case are undisputed. Prior to bankruptcy, Debtor had a long-standing professional and personal relationship with Appellant, Debtor's attorney. Appellant provided legal services for Debtor and Debtor's business interests. Debtor's businesses were flailing, and Debtor was unable to pay the $70,000 attorney fees that accrued over a period of several years. Appellant was aware that Debtor would be unable to pay his fees, but continued to provide legal services. Debtor's unpaid legal expenses continued to escalate, and on May 19, 2008, Debtor gave Appellant possession of the titles to two of Debtor's vehicles — a 1954 MG and a 1977 Ferrari — as a form of security for payment of the legal fees. There was, however, no written security agreement.

Appellant continued to provide legal services over the next several years, and the legal fees remained unpaid. When a bank began putting pressure on Debtor for payment, Appellant

requested possession of the vehicles to further solidify his security interest. Debtor accordingly turned over possession of the two vehicles to Appellant in the spring (last week of April or first week of May) of 2012. Debtor did not transfer ownership of the vehicles by signing over the two titles and completing assignment of ownership forms, however, until August 15, 2012 — just six days prior to Debtor's Chapter 7 bankruptcy filing on August 21, 2012. Debtor and Appellant agreed that the Ferrari was worth approximately $25,000 and that the MG was worth approximately $15,000. Although these amounts were insufficient to cover the amount of the unpaid legal fees, Debtor and Appellant agreed that the transfer would satisfy Debtor's fee debt.

At the time Appellant obtained ownership of the vehicles, the vehicles were not in working order — both required mechanical work to get them running — with substantial work required on the Ferrari. Appellant presented no evidence, however, of the value of the mechanical work that was performed.

Once Appellant obtained title to the vehicles, he put the vehicles up as collateral on two bank loans totaling $37,500, and then, in November 2013, sold the vehicles to a third party for $40,000. More than eight months after the sale, on August 1, 2014, the Chapter 7 trustee filed an adversary complaint against Appellant pursuant to § 547(b), among other provisions, seeking to avoid Debtor's transfer of ownership to Appellant, and to recover the value of the vehicles. The trustee alleged that the transfer occurred when Debtor signed the titles over to Appellant, just six days prior to bankruptcy. Appellant contended that he had a possessory attorney's lien on the vehicles to secure payment of his fees, which was perfected by possession of the titles in 2007, or, at the latest, on or about May 1, 2012, when he took possession of the vehicles - either date falling outside the 90-day look-back period for avoidance of a transfer under § 547(b). Both parties filed motions for summary judgment.

Working through the elements of § 547(b), the bankruptcy court concluded that Appellant did not have a valid or perfected attorney lien on the vehicles under Ohio law, and that the transfer occurred when Debtor transferred ownership by signing over the vehicle titles on August 15, 2012, within the look-back period for avoidance. As Appellant failed to show an exception to avoidance pursuant to § 547(c), the bankruptcy court granted the trustee's motion for partial summary judgment, avoiding the transfer, and denied Appellant's summary judgment

motion. Because an issue of material fact existed as to the value of the transfer, the bankruptcy judge reserved that issue for a later hearing.

The bankruptcy court subsequently held a hearing to determine the amount of the judgment in favor of the trustee. While it was agreed that the MG was worth $15,000, there was a dispute as to the value of the inoperable Ferrari at the time of transfer. Although the cars were ultimately sold for $40,000, Appellant had been forced to make substantial improvements to the vehicles, especially the Ferrari, during his ownership. The trustee requested the entire $40,000 sale price plus prejudgment interest from the date the trustee filed the adversary complaint. As the repairs to the vehicles were essentially a barter transaction between Appellant and his auto mechanic, there were no bills or invoices for the work performed, but Appellant maintained that the Ferrari was only worth $10,000 at the time of the transfer.

Noting that the term "value" in § 550(a) (pertaining to the trustee's recovery) refers to "fair market value," and after reviewing the evidence introduced, the bankruptcy court found the fair market value of the Ferrari at the time of the transfer to be $17,000. Therefore, the bankruptcy court entered a judgment in favor of the trustee for $32,000, plus the requested prejudgment interest from the date the adversary complaint was filed. Appellant's motion to amend and modify the judgment was denied, and this appeal followed.

## IV. DISCUSSION

**A. Did the bankruptcy court err in concluding that the transfers at issue were preferential and subject to avoidance under 11 U.S.C. § 547(b)?**

For purposes of the trustee's ability to avoid preferences under § 547(b), this case hinges on whether and when Appellant had a perfected lien on the two vehicles, or alternatively, the date on which Debtor transferred ownership of the vehicles to Appellant. Section 547(b) states, in pertinent part:

> (b) [T]he trustee may avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;

> (4) made –
>> (A) on or within 90 days before the date of the filing of the petition; . . .
>
> (5) that enables such creditor to receive more than such creditor would receive if –
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). As explained below, under Ohio law, Appellant did not have a perfected lien on the two vehicles before Debtor transferred ownership of the vehicles to Appellant by signing over the titles to Appellant and completing assignment of ownership forms on August 15, 2012, six days before Debtor filed his petition.

Appellant's primary argument against this conclusion is that he had a common law attorney's lien on the automobiles securing payment of Debtor's legal fees, which was perfected when he obtained physical possession of the titles or, at the very latest, when he obtained possession of the cars. Ohio has no statutory provision for an attorney's lien — such a lien must be derived from common law. The bankruptcy judge set forth a thorough discussion of the types of attorney's liens available in Ohio, and concluded that none could be applied in Appellant's circumstances.

There are essentially three types of attorney liens at common law: (1) retaining liens; (2) charging liens; and (3) contractual liens. A retaining lien is a lien that attaches to property, papers, documents, and money that comes into the hands of the attorney during the course of the representation, and terminates when the client pays the attorney's fee. This type of lien, however, is a "passive lien" and cannot be enforced. *Foor v. Huntington Nat'l Bank*, 499 N.E.2d 1297, 1301 (Ohio Ct. App. 1986). The "retaining lien has been referred to as a hostage lien. Because the property may not be legally converted, the value of the lien is in the leverage given to the attorney to force an unwilling client to pay the fees owed to the attorney." Andrew J. Mulcunry, *Attorneys' Liens: A Species of Property*, 25 J. LEGAL PROF. 203, 205 (2001). It is well established that

> the lien only attaches to property or funds which come into the attorney's possession during representation. A retaining lien will not properly attach to

property which is merely passing through the attorney and which are [*sic*] not consistent with the current representation. "Thus, no lien attaches to property received by an attorney who is acting as a trustee, escrow agent, or individual mortgagee."

*Id.* (citations omitted); *see also* Restatement (First) of Security § 62(b) cmt.i (Am. Law Inst. June 2016 update) ("The lien does not exist where papers or other chattels are delivered to an attorney for specific purposes inconsistent with the lien."). The delivery of the titles and transfer of the vehicles were in no way related to Appellant's representation of Debtor. They were not the subject of the representation, nor did Appellant obtain them as a result of the underlying litigation. Debtor voluntarily tendered them as security for, and then in payment of, Appellant's claim for legal fees. Because Appellant did not take possession of the car titles nor the vehicles in the course of his representation of Debtor, the retaining lien, although possessory in nature, is not applicable.

The second type of attorney's lien is the charging lien, which attaches to a judgment or other money awarded to the client as a result of the attorney's efforts.

[T]he right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.

*Cuyahoga Cty. Bd. of Comm'rs v. Maloof Props., Ltd.*, 968 N.E.2d 602, 605 (Ohio Ct. App. 2012) (quoting *Cohen v. Goldberger,* 141 N.E. 656 (1923)).

A charging lien may also attach to other property, besides money, that is obtained in litigation through the lawyer's efforts. *Mulcunry, supra,* at 205 (citation omitted). In the case of a charging lien, counsel must demonstrate the significance of his contribution to the judgment obtained. *Maloof* at 605. Like the retaining lien, the charging lien is also inapplicable to the circumstances of Appellant's possession of Debtor's property, as Appellant is not asserting that either the titles or vehicles represented an award rendered as a result of Appellant's professional services.

Some states, like Ohio, also recognize a contractual lien. Appellant had no contractual security interest in the vehicle titles nor in the vehicles, however, as "[i]t has been well established

that while no specific words or formalized documents are necessarily required to create a security interest, there must be some written documentation that indicates the parties' intent to create a security interest." *Drown v. Perfect (In re Giaimo)*, 440 B.R. 761, 768 (B.A.P. 6th Cir. 2010). The necessity of a writing originates with the statute of frauds. *Id.*, citing 4 White & Summers, *Uniform Commercial Code*, § 31-2 (6th ed. 2010). There is no such written documentation nor any other memorialized security agreement between Debtor and Appellant to evidence a security interest in the vehicles or their titles.[1]

Appellant did not have an attorney's lien or a contractual security interest via mere possession of either the car titles or the cars themselves. At best, Appellant may have secured a pledge. A common law pledge includes a contract between the pledgor and pledgee, who intend that the property pledged is to be held as security. *Broadnax v. Prudential-Bache Securities, Inc. (In re Zimmerman)*, 69 B.R. 436, 438 (Bankr. E.D. Wis. 1987) (citing *Matz v. Farmers and Citizens Bank*, 261 N.W. 755, 757 (Wis. 1935)). "[T]o perfect a pledge and create a lien it is essential that the pledgee have possession of the pledged property." *Id.* (citing *Geilfuss v. Corrigan*, 70 N.W. 306, 310 (Wis. 1897) and Restatement (First) of Security §1 cmt. A (1941)). In *Zimmerman*, the debtor never relinquished his interest in the funds at issue, so the pledge was never perfected. *Id.* at 439. The same can be said of Debtor and Appellant in this case

If an attorney's lien existed here, state law governs the means by which any lien becomes perfected. Pivotal to the bankruptcy court's decision is the Ohio Certificate of Title Act, which, because of the nature of the property at issue, must reign supreme. That Act provides, in pertinent part:

> (A) No person acquiring a motor vehicle from its owner . . . shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle . . . or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver

---

[1] It is in the case of a contractual lien that an attorney/creditor must tread lightly around ethical rules. "In Chapter 7, debtors and their secured creditors are adversaries." *In re Pace*, No. 15-31016, 2015 WL 6728007, at *3 (Bankr. W.D.N.C. Nov. 2, 2015) (slip op.). As the bankruptcy judge noted, Ohio Rule of Professional Conduct 1.8, pertaining to conflicts of interest, could be triggered in some circumstances when an attorney takes a security interest in property of a client. While the bankruptcy court's November 23, 2015 order discusses Professional Responsibility Rule 1.8, its ruling was based on reasoning independent of that rule.

or estoppel operates in favor of such person against a person having possession of the certificate of title to . . . the motor vehicle, for a valuable consideration.

(B) . . . [N]o court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(1) By a certificate of title. . . .

Ohio Rev. Code § 4505.04 (A) and (B)(1). Section 4505.13, pertaining to perfection of a security interest in a motor vehicle, provides, in part:

(B) [A]ny security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement in to the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants.

. . . .

Ohio Rev. Code § 4505.13 (B). It is well established under Ohio law that a security interest in a motor vehicle only may be perfected by complying with the requirements of Ohio's Certificate of Title Act, which requires a notation of the lien or security interest on the certificate. *Luper v. Guardian Fin. Co. (In re McAlmont)*, 385 B.R. 191, 195 (Bankr. S.D. Ohio 2008); *see also First Merit Bank, N.A. v. Angelini*, 823 N.E.2d 485, 491 (Ohio Ct. App. 2004) ("[W]e find that the Certificate of Title Act was created to protect bona fide purchasers, because motor vehicles are a distinct and different type of goods. To equate the sale of motor vehicles to that of a refrigerator or other household appliance would be to render the Certificate of Title Act meaningless."); *Graham v. The Huntington Nat'l Bank (In re Medcorp, Inc.)*, 472 B.R. 444, 451 (Bankr. N.D. Ohio 2012) (explaining that when a certificate of title has been issued for a vehicle, a creditor can only perfect its interest in the vehicle by noting the security agreement on the certificate of title, and such notation of a lien is the exclusive means by which a security interest is perfected in the vehicle) (quoting *Drown v. Perfect (In re Giamo)*, 440 B.R. 761, 765 (B.A.P. 6th Cir. 2010)).

Thus, even if Appellant had a valid attorney's lien, it was unperfected under applicable law. Appellant's purported liens never were notated on the certificates of title to the two

vehicles. Under Ohio law, Debtor did not relinquish his interest in the two vehicles until he signed the titles over to Appellant six days prior to bankruptcy. Therefore, any claimed lien interest was unperfected and Debtor's transfer of his ownership interest in the two vehicles six days prior to filing bankruptcy was preferential. If mere possession of an automobile or the title is sufficient to create an ownership interest, any stolen car lawfully would become the property of the thief.

The bankruptcy court cited *Veltri v. City of Cleveland*, 146 N.E.2d 442 (Ohio 1957) to support its determination that "since the enactment of Section 4505.04, Revised Code, the mere possession of an automobile no longer carries with it any right or interest in that automobile which a court can recognize." The bankruptcy court reasoned:

> Simply holding an unassigned and un-notated motor vehicle title does not: 1) transfer ownership; or 2) create a lien under Ohio law. Thus, an attorney holding titles to vehicles, without more, does not create a retaining lien on those vehicles. The unassigned motor vehicle titles were simply documents reflecting Debtor's ownership of the vehicles at the time, and – even accepting Defendant's argument that a retaining liens [*sic*] can apply to motor vehicles – possession of the titles was not sufficient for the vehicles to have come 'into the attorney's hands' for retaining lien purposes. *Foor* [ *v. Huntington Nat'l Bank*, 27 Ohio App.3d 76, 79, 499 N.E.2d 1297, 1302 (Ohio Ct. App. 1986)]. Under the language in *Foor*, obtaining the bare titles may have given Defendant "the right to retain possession of such property," but "such property" would be the physical paper titles, not the two vehicles. *Id.*

Memo. Decision and Order Re: Cross-Motions for Summ. J. at 17, Nov. 23, 2015, Adv. No. 14-3089 ECF No. 44. We agree with the bankruptcy court's determination that Appellant had no rights, title, or interest in the vehicles or the titles via mere possession, and that no attorney's lien attached. The transfer from Debtor to Appellant therefore occurred when Debtor transferred ownership in the vehicles by assignment of the titles just six days prior to bankruptcy, well within the 90-day look back period of § 547(b)(4)(A).

Although Appellant gave little mention to the requirements of § 547(b)(5), which provides that, for avoidance of a preferential transfer, the creditor must have received more than he would receive if the case were a Chapter 7, he does argue that the assignment of the titles did not create a greater recovery in this case, as his lien was for $70,000 and the vehicles were worth

considerably less. Since Debtor would be able to discharge the antecedent unsecured $70,000 debt in his Chapter 7 case, however, this argument lacks merit. As the bankruptcy court correctly noted, "'Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.'" Memo. Decision and Order Re: Cross-Motions for Summ. J. at 9, Nov. 23, 2015, Adv. No. 14-3089 ECF No. 44 (citations omitted). Here, the bankruptcy court found unsecured creditors would receive no distribution; thus, it correctly concluded Appellant received more than he would have in the Chapter 7 via the vehicle transfers.

All other requirements for avoidance set forth in § 547(b) were satisfied, and are not at issue in this appeal. For these reasons, the bankruptcy court's award of partial summary judgment in favor of the Chapter 7 bankruptcy trustee is affirmed.

### B. Did the bankruptcy court clearly err in its determination of the value of the property transferred?

Because there was a material dispute of fact regarding the amount of the trustee's recovery under § 550(a), the bankruptcy judge held a hearing to ascertain the value of the two vehicles at the time of transfer to Appellant. As there was no disagreement regarding the $15,000 value of the 1954 MG, the testimony and evidence at the hearing was focused on the value of the 1977 Ferrari. As Debtor and Appellant agreed that the value of the Ferrari at the time of transfer was $25,000, the Chapter 7 trustee argued that the combined value of the two vehicles, and hence, the amount of his recovery, should be $40,000. Appellant contended, however, that the value asserted by Debtor at the time of the transfer was overstated, as the Ferrari was inoperable and required considerable mechanical work to make it road-worthy. Appellant claimed that, at the time of transfer, the Ferrari was worth only $10,000, thus rendering the total value of the property transferred to be $25,000 and not the $40,000 amount claimed by the trustee. The auto mechanic who repaired the Ferrari did not issue invoices or bills setting forth the exact value of the work required. The auto mechanic testified that, in his opinion, the Ferrari was worth $10,000 before the repairs were made. The evidence also established that, after Debtor

signed the titles over to Appellant, two banks loaned Appellant a total of $37,500, secured by the vehicles, and after the repairs, both vehicles were sold for a combined price of $40,000.

After reviewing all of the evidence and considering the burden of proof, the bankruptcy court essentially split the difference and determined the Ferrari's fair market value at the time of transfer to be $17,000. Therefore, the trustee was awarded a judgment of $32,000, representing the fair market value of both cars at the time of the transfer, with prejudgment interest from August 1, 2014 — the date that the adversary proceeding was filed. Although the bankruptcy court acknowledged that the valuation evidence was not presented by auto experts, but came from Debtor (owner) and Appellant's auto mechanic, the bankruptcy court's approach of finding a "middle" value is a common and accepted means of determining value in the face of conflicting evidence. *See, e.g., In re Abruzzo*, 249 B.R. 78, 86 (Bankr. E.D. Pa. 2000) ("I am left to some extent with the proverbial battle of the appraisers. Finding merit to both their positions, the only conclusion I can reach is to find some value in between."); *Heritage Sav. & Loan Assoc. v. Rogers Dev. Corp. (In re Rogers Dev. Corp.)*, 2 B.R. 679, 684-5 (Bankr. E.D. Va. 1980) (noting that, as the court had no reason to place greater credence on one expert's testimony over another's, the fair market value should be somewhere in between the two competing valuations); *In re Courtright*, 57 B.R. 495, 498 (Bankr. D. Or. 1986) ("Both appraisers recognized that appraising is not an exact science but depends to some degree upon the judgment of the appraiser. It would seem to appear appropriate that the court fix the improvements at a figure between the figures of the two appraisers . . . .").

> Great deference is given to the bankruptcy court's fact-finding in determining value.
>
> > "The valuation of property is an inexact science and whatever method is used will only be an approximation and variance of opinion by two individuals does not establish a mistake in either." *Boyle v. Wells (In re Gustav Schaefer Co.)*, 103 F.2d 237, 242 (6th Cir. 1939). "Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses." *In re Smith*, 267 B.R. 568, 572 (Bankr. S.D. Ohio 2001).

*In re Creekside Senior Apartments, LP,* 477 B.R. 40, 61 (B.A.P. 6th Cir. 2012). Further, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside

unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.* (quoting Fed. R. Bankr. P. 8013). Courts have broad discretion in weighing testimony. *Id.* In this case, giving due deference to the bankruptcy court's fact finding, the bankruptcy judge did not clearly err in arriving at a reasonable value for the Ferrari that falls midway between the parties' competing values.

Furthermore, the bankruptcy court was also acting within its broad discretionary authority when it awarded the trustee prejudgment interest accruing at the statutory rate, commencing with the filing of the adversary proceeding. "The Code does not specify whether the trustee may recover interest and costs in addition to recovering the property or its value. The bankruptcy court should exercise its equitable powers to award the trustee interest and costs when appropriate." 5 Collier on Bankruptcy ¶ 550.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing, *inter alia*, *In re Bellanca Aircraft Corp.*, 850 F2d. 1275 (8th Cir. 1988) (awards of prejudgment interest in preferential transfer actions are discretionary with the court). The bankruptcy court's award of prejudgment interest was not clearly erroneous.

### C. Did the bankruptcy court abuse its discretion in denying Appellant's motion for a new trial and amendment and modification of the judgment?

Appellant also appeals the bankruptcy court's order denying his motion to amend and modify the judgment.[2] Because no trial was ever held, Appellant's motion for a new trial was properly treated as a motion to alter or amend a judgment under Rule 59(e). The denial of a Rule 59(e) motion is reviewed for abuse of discretion.

> Under this standard [of review], the district court's decision and decision-making process need only be reasonable. The granting of a Rule 59(e) motion is an extraordinary remedy and should be used sparingly. This is because a motion pursuant to Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.

---

[2] Appellant filed a motion for a new trial or in the alternative, to amend and modify the judgments entered on November 23, 2015 (order granting partial summary judgment) and on February 25, 2016 (order determining value of the trustee's recovery). Such a motion must be filed no later than 14 days after entry of the judgment. Fed. R. Bankr. P. 9023 (making Fed. R. Civ. P. 59 applicable in bankruptcy cases). Although the November 23, 2015 order is beyond the 14-day period, because that order provided that the matter was set for further hearing on January 21, 2016, and that hearing resulted in the February 25, 2016 order, Appellant's Rule 9023 motion was timely filed.

*Pequeno v. Schmidt (In re Pequeno)*, 240 F. App'x 634, 636 (5th Cir. 2007) (internal quotes, citations and footnotes omitted); *see also United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) ("A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e), and this court will not reverse absent a clear abuse of discretion.") (citation omitted); *Kieffer v. Riske (In re Kieffer-Mickes, Inc.)*, 226 B.R. 204, 208 (B.A.P. 8th Cir. 1998) ("Under an abuse of discretion standard, this court cannot reverse the bankruptcy court's ruling unless it 'has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'") (citation omitted).

More specifically, "[m]otions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). Appellant did not produce any newly discovered evidence, nor did he point to any intervening change in controlling law. He did not argue that manifest injustice would occur if the bankruptcy court's orders were not modified. Appellant's only argument that fits within the guidelines of *GenCorp* was that the bankruptcy court made a clear error of law in its interpretation of *Veltri* regarding the insufficiency of mere possession to evidence a lien after the enactment of the Ohio Certificate of Title Act. *Veltri* makes clear that, since the enactment of Ohio Rev. Code § 4505.04, the mere possession of a vehicle will not provide any right nor interest in the vehicle. This case was on point and the bankruptcy court justifiably relied on *Veltri*.

Appellant also argued that the bankruptcy court failed to give sufficient deference to *Foor*, which uses the language "all property" when discussing retaining liens. 499 N.E. 2d at 1301 ("A retaining lien is a common-law lien of an attorney attaching to *all property*, papers, documents and monies of the client...."). However, the remainder of this sentence goes on to specify that "all property" referred to must come into the attorney's hands "*during the course of the representation of the client....*" *Id.* (emphasis added). Further, the cases cited in *Foor* are cases in which the attorney's lien is attached to property that was related directly to the legal matter involving the representation. Had the bankruptcy court given greater deference to *Foor*, as

Appellant argues it should, the court would have reached the same conclusion: no attorney's lien attached to the vehicles and no lien was perfected.

Appellant makes other arguments including a duplicate title issue that the bankruptcy court discussed by way of illustration, and lien rights, which Appellant argued for the first time in his motion to alter or amend. Courts are not required to grant a motion to amend an order on an issue that would not alter the court's prior decision. *Rodriquez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959-60 (6th Cir. 2004) (unpublished). Analogous to the general appellate rule that, absent exceptional circumstances or a potential miscarriage of justice, "'[a]ppellate courts ordinarily do not consider issues raised for the first time on appeal [and] [a]n argument is waived that is not first presented to the bankruptcy court,'" *R.D.F. Devs., Inc. v. Sysco Corp., (In re R.D.F. Devs., Inc.)*, 239 B.R. 336, 340-41 (B.A.P. 6th Cir. 1999), bankruptcy courts are not required to grant motions to alter or amend when the losing party raises new legal theories that do not represent an intervening change in the law. *Owner-Operator Indep. Drivers Assoc., Inc. v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003) (citations omitted). Appellant simply disagrees with the bankruptcy court's decisions, and his motion to amend primarily reargues issues that were unsuccessful at earlier hearings. These are not proper bases for granting this type of motion. *CitiMortgage, Inc. v. Nyamusevya*, No. 2:13-CV-00680, 2015 WL 1000444, at *3-4 (S.D. Ohio, March 5, 2015). There is nothing in the bankruptcy court's March 14, 2016 order that gives a definite and firm conviction that the bankruptcy court committed a clear error of judgment and thereby abused its discretion.

## CONCLUSION

For the reasons stated herein, the bankruptcy court's orders are **AFFIRMED**.